UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| HAMILTON BYNOG | CASE NO.  18-cv-902 |
| -vs- | JUDGE DRELL |
| MICKEY DOVE ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

RULING AND ORDER

Before the court is a motion to dismiss filed by defendant Billy Joe Harrington ("Harrington"), Doc. 74, and a motion to dismiss filed by defendant Brooke Williams ("Williams"), Doc. 84.  For the following reasons and after consideration of the law and the record, the motion to dismiss filed by Williams, Doc. 84, will be **GRANTED**, rendering plaintiff Hamilton Bynog's ("Bynog") claims against Harrington **MOOT**.

I.     **Background**

Following a custody proceeding in the Natchitoches Parish Courthouse, Bynog was unknowingly separated from his son, who was stopped by the bailiff.  Bynog realized his son was missing after reaching the parking lot and rushed back to and through the courthouse to find his son.  In his rushed state, he "collided" with court security escorting his son and ex–wife. Doc. 1 p 2. Court security proceeded to tackle Bynog to the ground and to tase Bynog while on the ground.  This of course was all captured on courthouse security cameras.

While this incident was unfolding, Williams was a part time student worker at the Natchitoches Parish Courthouse and saw the incident take place over courthouse

1

security monitors which provide a live feed from the courthouse security cameras. Williams used her cellular phone to take a video of the feed playing on the monitor. She captured a ten second video of Bynog colliding with court security and court security tackling and tasing Bynog.  This video was then uploaded to social media. The video was original to the extent that it was a phone recording of a security monitor playing a live feed except for the inclusion of a female voice stating, "They are beating him down," and a caption stating, "Another day at the Courthouse."

The collision led to a criminal misdemeanor bench trial wherein Bynog was convicted of one count of assault on a police officer for the initial collision and two counts of resisting arrested. State v. Bynog, 2019-150, 2019 WL 2205568 (La. App. 3 Cir. 5/22/19).  For reasons beyond the record before this court,[1] very little if any video evidence from the courthouse surveillance system was submitted in the record of Bynog's criminal proceeding.  Williams' recording was the only video submitted. Upon review before the Louisiana Supreme Court, Williams' recording was reference to exonerated Bynog on the two counts of resisting arrest.  State v. Bynog, 2020-00754, 308 So. 3d 1147 (La. 1/20/21) ("Based on all the evidence adduced at trial, particularly the video of the incident, even when viewed in the light most favorable to the prosecution, we find the evidence insufficient to sustain the convictions of applicant on two counts of resisting an officer.")

---

[1] Bynog does allege that security footage from the courthouse camera system was not preserved and discoverable despite his timely request. The Defendants elected to not respond to these factual allegations, presumably because Bynog does not raise a prosecutorial misconduct or other related evidentiary claim.

Bynog filed the instant suit against Williams for her actions and against Harrington, District Attorney of Natchitoches Parish, under a theory of *respondeat superior* as Williams' superior.  Bynog claims these actions violated his Fourteenth Amendment rights to due process, to a fair and impartial trial, and his right to be innocent until proven guilty and brings suit under 42 U.S.C. § 1983 and Louisiana tort law.

## II.   Law and Analysis

### a.  § 1983

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 270 (1994).  Thus, we must at the outset determine whether Bynog has properly raised a constitutional right.

Bynog claims that Williams' uploading of the ten second video to social media, and Harrington's failure to prevent or adequately train Williams to refrain from recording such information, resulted in Bynog's inability to defend himself and precluded a fair and impartial trial violating his Fourteenth Amendment rights. Bynog's explanation of how Williams' actions violated his Fourteenth Amendment rights is tenuous at best.  See, e.g., Doc. 86-2 p. 6 ("The release of the "10-second" video by a District Attorney employee cause the plaintiff to be judged guilty by the community prior to evidence submitted at trial.").  Bynog claims that Williams actions violated his right to privacy and to be free from defamation, which in turn

3

Bynog claims has given rise to a violation of the Fourteenth Amendment because it resulted in an unfair and partial trial.  Bynog also claims the publication of the video has resulted in the loss of business as it affected his reputation within the community.  However, Bynog's interest in his privacy and reputation are matters protected under state tort law, and neither form the basis of a § 1983 claim. See, e.g., Cook v. Houston Post, 616 F.2d 791, 794 (5th Cir. 1980).   Without some explanation of how these alleged state violations transform into a constitutional violation, Bynog fails to adequately demonstrate how the alleged tort violations are causally connected to a constitutional violation under the Fourteenth.

In the absence of any causal connection between the state law claims and the constitutional claim, the record before us is as it pertains to any alleged Fourteenth Amendment violation is relatively simple.  Regarding Bynog's conviction of battery of an officer, Bynog admits that he "collided" with court security running through the courthouse halls.  Doc. 1 p. 2.  The collision formed the basis of the charge of battery of a police officer, and thus, a finding by a judge conducting a bench trial that Bynog battered a police officer is not unfair and partial as it happened by Bynog's own admission.  Regarding the remaining convictions of resisting arrest, Bynog does not demonstrate how the judge was unfair or partial by virtue Williams uploading the recording to social media beyond blanket statements such as "...cause the plaintiff to be judged guilty by the community..." Doc. 86-2 p. 6.  Even if the judge may have been impartial, the Louisiana Supreme Court overturned Bynog's convictions on these counts. Bynog, 308 So. 3d 114.  Thus, Bynog's Fourteenth Amendment claim

4

based on the charges of resisting arrest is moot as any unfairness or impartiality was washed clean by dismissal.   Accordingly, Bynog has failed to present a cognizable Fourteenth Amendment claim.

### b.  Louisiana tort

The remaining Louisiana tort claim appears to combine concepts of privacy and defamation.  However, Bynog does not have a reasonable claim to privacy in a place a public as a courthouse.   Moreover, defamation requires, among other elements, a false statement. "[R]ecovery may be precluded if the defendant shows ... that the statement was true…" Costello v. Hardy, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 141.  The ten second video was unaltered in any major way other than the inclusion of a female voice heard saying, "They are beating him down,"  and a caption stating, "Another day at the Courthouse."  By Bynog's own admission, he was tackled and tased, and indeed it was another day at the courthouse.  Therefore, neither the video nor its commentary, nor its caption was false.  It was, however, embarrassing. Unfortunately, embarrassing things happen in public places and may be published against the embarrassed party's will.  Moreover, smartphones and social media have made publication highly accessible.  This case, along with other embarrassing social media publications, serves to caution everyone to mind their actions in public.

## III.   Conclusion

For the above reasons it is hereby **ORDERED** that Williams motion to dismiss, Doc. 84, will be **GRANTED**, dismissing Bynog's claims against Williams with

prejudice.  Because Bynog's claims against Harrington are based upon *respondeat superior* as Williams' supervisor, it is further...

**ORDERED** that Bynog's claims against Harrington are **DISMISSED** rendering Harrington's motion for summary judgment, Doc. 74, **MOOT**.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 16 day of November 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT